**BURSOR & FISHER, P.A.**
L. Timothy Fisher (State Bar No. 191626)
1990 North California Boulevard, 9th Floor
Walnut Creek, CA 94596
Telephone: (925) 300-4455
E-Mail: ltfisher@bursor.com

**BURSOR & FISHER, P.A.**
Philip L. Fraietta (State Bar No. 354768)
1330 Avenue of the Americas, 32nd Floor
New York, NY 10019
Telephone: (646) 837-7150
Facsimile: (212) 989-9163
E-mail: pfraietta@bursor.com

*Attorneys for Plaintiffs*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

ALAN STARZINSKI, OLADEJI ODUMOSU, AURELIO MEDINA, and DARNELL MCCOY, individually and on behalf of all others similarly situated,

Plaintiffs,

v.

META PLATFORMS, INC.,

Defendant.

Case No. 3:24-cv-04501-AMO

**PLAINTIFFS' REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

Date: June 26, 2025
Time: 2:00 p.m.
Courtroom: 10, 19th Floor
Judge: Hon. Araceli Martinez-Olguin

Plaintiffs Alan Starzinksi, Oladeji Odumosu, Aurelio Medina, and Darrnell McCoy ("Plaintiffs") request that the Court consider and take judicial notice of **Exhibit A** under Federal Rule of Evidence 201, 803(8), (14) and (15). Exhibit A, incorporated by reference in Plaintiffs' First Amended Complaint (Dkt. No. 25), is a true and correct copy of the Declaration of Tobias Wooldridge, a publicly filed document in the matter *In Re Meta Pixel Healthcare Litig.*, Case No. 3:22-cv-03580-WHO, Dkt. No. 76-1 (N.D. Cal.).

Rule 201 permits courts to take judicial notice of facts that "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(2). Publicly filed documents are proper subjects of judicial notice. See, e.g., United States v. Black, 482 F.3d 1035, 1041 (9th Cir. 2007); *see Lee v. City of Los Angeles,* 250 F.3d 668, 689 (9th Cir.2001) ("A court may take judicial notice of 'matters of public record' without converting a motion to dismiss into a motion for summary judgment."); *accord Woods v. S. California Edison Co. (SCE)*, 2014 WL 12586118, at *3 (C.D. Cal. Feb. 27, 2014)

Accordingly, Plaintiffs respectfully request that the Court take judicial notice of Exhibit A.

Dated: January 21, 2025

Respectfully submitted,

**BURSOR & FISHER, P.A.**

By: */s/ Philip L. Fraietta*

Philip L. Fraietta (State Bar No. 354768)
1330 Avenue of the Americas
New York, NY 10019
Telephone: (646) 837-7150
Facsimile: (212) 989-9163
E-mail: pfraietta@bursor.com

**BURSOR & FISHER, P.A.**
L. Timothy Fisher (State Bar No. 191626)
1990 North California Blvd., Suite 940
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
Email: ltfisher@bursor.com

*Attorneys for Plaintiffs*

**EXHIBIT A**

GIBSON, DUNN & CRUTCHER LLP
LAUREN R. GOLDMAN (*pro hac vice*)
lgoldman@gibsondunn.com
200 Park Avenue
New York, NY 10166
Telephone: (212) 351-4000
Facsimile: (212) 351-4035

ELIZABETH K. MCCLOSKEY (SBN 268184)
emccloskey@gibsondunn.com
ABIGAIL A. BARRERA (SBN 301746)
abarrera@gibsondunn.com
555 Mission Street, Suite 3000
San Francisco, CA 94105
Telephone: (415) 393-8200
Facsimile: (415) 393-8306

TRENTON J. VAN OSS (*pro hac vice*)
tvanoss@gibsondunn.com
1050 Connecticut Avenue, N.W.
Washington, DC 20036-5306
Telephone: (202) 955-8500
Facsimile: (202) 467-0539

COOLEY LLP
MICHAEL G. RHODES (SBN 116127)
rhodesmg@cooley.com
KYLE C. WONG (SBN 224021)
kwong@cooley.com
CAMERON J. CLARK (SBN 313039)
cclark@cooley.com
CAROLINE A. LEBEL (SBN 340067)
clebel@cooley.com
3 Embarcadero Center, 20th Floor
San Francisco, CA 94111-4004
Telephone: (415) 693-2000
Facsimile: (415) 693-2222

*Attorneys for Defendant Meta Platforms, Inc. (formerly known as Facebook, Inc.)*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE META PIXEL HEALTHCARE LITIGATION<br><br>This Document Relates To:<br><br>Case No. 3:22-cv-3580-WHO (Doe) | Case No. 3:22-cv-3580-WHO<br><br><u>PUTATIVE CLASS ACTION</u><br><br>**DECLARATION OF TOBIAS WOOLDRIDGE IN SUPPORT OF DEFENDANT META PLATFORMS, INC.'S OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION**<br><br>*[Declaration of Abigail Barrera and [Proposed] Order filed concurrently herewith]*<br><br>Action Filed: June 17, 2022<br><br>Honorable Judge William H. Orrick |

I, Tobias Wooldridge, hereby declare and state:

1. I am a software engineer at Meta. I offer this declaration in support of Meta's Opposition to Plaintiff's Motion for Preliminary Injunction. The following facts are based on my own personal knowledge, unless otherwise indicated, and, if called and sworn as a witness, I could and would testify competently to them.

**<u>My Background And Work At Meta</u>**

2. I have worked at Meta as a software engineer since February 2015. I am a senior engineer on the Signals team, which bears primary responsibility for maintaining and updating the Meta Pixel code. My team is also responsible for maintaining and implementing Meta's systems that detect and filter potentially sensitive data being sent by third-party developers to Meta via the Meta Pixel, among other Business Tools. I have worked on the Signals team since April 2017.

**<u>Meta Prohibits Developers From Sending Health Information Through Its Pixel Tool</u>**

3. Meta's Pixel is a free, publicly available piece of code that third-party website developers can choose to install and use on their websites to measure certain actions taken on their own websites. Meta's Pixel is available to and used by website developers across industries. Other companies offer their own pixel tools.

4. Specifically, when someone takes an action a developer chooses to track on their website (like subscribing to email updates), the Meta Pixel is triggered and sends Meta certain data, called an "Event." Meta attempts to match the Events it receives to Meta users (Meta cannot match non-Meta users). The developer can then create "Custom Audiences" based on Events and can target ads on Facebook, Instagram, and publishers within Meta's Audience Network to Meta users who have taken certain actions on their own website. Meta can also provide the developer with de-identified, aggregated reporting that helps the developer better understand the impact of its ads by measuring what happens when people see them. The identity of matched Meta users is never revealed to the developer or to any advertiser.

5. Meta does not want or permit developers to transmit sensitive information, including health information, to it through the Pixel tool. Meta takes numerous measures to prevent the transmission and receipt of that information.

6. First, Meta requires all developers to agree to its Business Tools Terms before they can obtain a Pixel ID and utilize Meta Pixel code in a website. The Business Tools Terms expressly prohibit developers from sending Meta health or otherwise sensitive information (including any information defined as sensitive under applicable law) and require developers to warrant that they have the legal right to share any information they choose to share with Meta. Developers must also accept Meta's Commercial Terms before using Meta for a business purpose, which similarly prohibit sending Meta health or otherwise sensitive information.

7. Second, during the Meta Pixel ID creation process—a necessary step to install and use the Meta Pixel—Meta reminds developers not to send Meta sensitive user data, linking to the Business Tools Terms and to Meta's Business Help Center content about restricted data ("About Restricted Meta Business Tools Data"). Attached as **Exhibit 1** is a true and correct copy of the article entitled "About Restricted Meta Business Tools Data," downloaded from the Meta Business Help Center on October 13, 2022. Meta has published several additional Business Help Center articles that explain and give examples of the kinds of information (including health information) that developers should not send to Meta, provide steps developers can take to avoid sending such information, and describe how to address instances in which sensitive information may have been sent.

8. Third, in addition to requiring developers to agree not to send Meta any information they do not have the legal right to share, Meta developed and implemented a filtering mechanism to screen out potentially sensitive data it detects. Meta developed the filter to detect data sent through the Pixel (as well as other Business Tools) that it categorizes as potentially sensitive data, including health data, and the filter prevents that detected data from being ingested into Meta's ads ranking and optimization systems. [redacted]

9. When Meta's systems detect and filter out data they categorize as potentially sensitive, Meta sends notifications to the developer (1) via email and (2) in two locations in Meta's developer

dashboard, Events Manager. These notifications inform the developer that Meta detected and blocked data that may not comply with Meta's terms; confirm that the removal may affect ad performance; and provide details about the affected data, including the URL where the events occurred, the location (but not the contents) of the potentially violating information, steps the developer can take to address the issue, and an email address to contact with questions.

**Meta Users Consent To Meta's Use Of Pixel Data And Can Control And Disconnect Their Off-Facebook Activity**

10. Meta discloses to users that it receives data from third parties, including data sent via the Pixel tool, and provides several ways for its users to review and control Meta's use of that data. The Data Policy, to which all users of Meta services must agree, explains that Meta may receive information about users' activities off the Meta services, including from developers that use the Meta Business Tools, including the Meta Pixel. The Data Policy also discloses how Meta uses such data, including by providing measurement, analytics, and other business services. Meta users also must agree to the Terms of Service and Cookies Policy, which disclose that their personal data can be used to provide targeted ads.

11. Meta also enables its users to review a summary of information Meta has received about their activity from third parties, including through the Pixel, and to disconnect that data from their account. Specifically, using the Off-Facebook Activity tool, which is linked to in the Data Policy and accessible via other entry points, Meta users can control or disconnect the off-Facebook activity that has been associated with their Facebook account, subject to some exceptions for security and safety needs. Meta users can disconnect historical third-party activity data from their account using the "Clear previous history" option. They can also "turn off" storage of future connections between their Facebook account and their activities off Facebook using the "Disconnect Future Activity" option. Meta users can make this choice for all third-party websites or on a website-by-website basis.

12. In addition, Meta provides other privacy tools and resources to users of the Meta services that allow them to control how data shared by third parties can be used to show them relevant ads. Specifically, the "Data About Your Activity From Partners" tool within Meta's "Ad Settings" allows users to opt out of receiving personalized advertisements based on their activity on third-party

websites, apps, or offline, among other things.

13. Additional tools Meta provides to its users, which enable them to control advertisements they receive, include the following:

- **Hide ad**: Users can hide individual advertisements appearing in their News Feed.
- **Report ad**: Users can report advertisements in their News Feed if they consider them to be inappropriate—for example, due to containing spam, false news, or being misleading or sexually inappropriate.
- **Hide advertiser**: Users can hide all advertisements from a specific developer altogether via their Ad Preferences.
- **Limit ad topics**: Users can limit advertisements about topics such as alcohol, parenting, pets, social issues, and elections or politics, and advertisers cannot target the user based on an interest in that topic.

I declare under penalty of perjury that the foregoing is true and correct, and that I executed this Declaration on October 17, 2022, in Adelaide, South Australia.

Tobias Wooldridge

Tobias Wooldridge

# Exhibit 1

**At Meta, we have policies around the kinds of information businesses can share with us. We don't want websites or apps sending us sensitive information about people.**

Business Tools Data is data sent from advertisers to Meta in connection with advertising, matching, measurement and analytics, including through the use of Business Tools, Social Plugins, Login, and certain APIs. Meta's Business Tools Terms outline the type of data that advertisers should not send to Meta via any of the Meta Business Tools.

Specifically, advertisers should not share Business Tools Data with Meta that they know or reasonably should know is either from or about children under the age of 13, or includes health or financial information, or other categories of sensitive information. This includes any information defined as sensitive under applicable laws, regulations and applicable industry guidelines.

Advertisers may use the Meta Business Tools to send to Meta information that personally identifies individuals (referred to as Contact Information), such as names, email addresses, and phone numbers, to help Meta match the data advertisers share with Meta user accounts. However, such Contact Information must be hashed in a manner specified by Meta before transmission, when using a Meta image Pixel or other Meta Business Tools. Visit Meta for Developers for hashing instructions.

Use the Learn More section below for further guidance on certain types of sensitive Business Tools Data prohibited under Meta's Business Tools Terms.

If you receive a notification that you're violating Meta's Business Tools data policies, learn how to troubleshoot the issue.

## Learn more