**BURSOR & FISHER, P.A.**
Philip L. Fraietta (State Bar No. 354768)
50 Main Street, Suite 475
White Plains, NY 10606
Telephone: (914) 874-0708
Facsimile: (914) 206-3656
Email: pfraietta@bursor.com

*Attorneys for Plaintiff*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA – SAN FRANCISCO DIVISION**

| | |
|---|---|
| OLADEJI ODUMOSU, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>META PLATFORMS, INC.,<br><br>Defendant. | Case No. 4:24-CV-04501-AMO<br><br>**NOTICE OF MOTION AND MOTION FOR CLASS CERTIFICATION**<br><br>Date: December 3, 2026<br>Time: 2:00 PM<br>Courtroom: 5 – 2nd Floor<br>Judge: Araceli Martínez-Olguín |

## NOTICE OF MOTION

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE THAT on December 3, 2026, at 2:00 p.m., or as soon thereafter as the matter may be heard in the above-entitled Court, located at the Ronald V. Dellums Federal Building and United States Courthouse, 1301 Clay Street, Oakland, CA 94612, Plaintiff Oladeji Odumosu ("Plaintiff") will and hereby does move for class certification of the following class and subclass:

1. All persons in the United States who, from January 1, 2022 to and through the date that class notice is disseminated, had the same email address associated with a subscription to ESPN+ and a Facebook account, and for whom there is associated Event Data in the ads_pixel_traffic table stored in Meta Platforms, Inc.'s Hive database showing their video-viewing behavior on ESPN+ (the "Class").
2. All persons in the California who, from January 1, 2022 to and through the date that class notice is disseminated, had the same email address associated with a subscription to ESPN+ and a Facebook account, and for whom there is associated Event Data in the ads_pixel_traffic table stored in Meta Platforms, Inc.'s Hive database showing their video-viewing behavior on ESPN+ (the "Subclass").

Excluded from the proposed Class and Subclass defined above are Defendant Meta Platforms, Inc. ("Defendant" or "Meta") and any entities in which Defendant has a controlling interest, Defendant's agents and employees, the judge to whom this action is assigned, members of the judge's staff, and the judge's immediate family.

This motion is made on the grounds that Plaintiff has met each of the requirements of Rules 23(a) and 23(b)(3). This Motion is based on this Notice of Motion, the attached Memorandum of Points and Authorities, all supporting declarations and exhibits, the pleadings and papers on file, and upon such matters as may be presented to the Court at the time of the hearing.

## CIVIL LOCAL RULE 7-4(a)(3) STATEMENT OF ISSUE TO BE DECIDED

Whether the Court should appoint Plaintiff Odumosu as the class representative, appoint Philip L. Fraietta of Bursor & Fisher, P.A. as class counsel, and certify the Class and Subclass.

Dated: June 25, 2026

**BURSOR & FISHER, P.A.**

By: *\/s/ Philip L. Fraietta*
Philip L. Fraietta

Philip L. Fraietta (State Bar No. 354768)
50 Main Street, Suite 475
White Plains, NY 10606
Telephone: (914) 874-0708
Facsimile: (914) 206-3656
Email: pfraietta@bursor.com

*Attorneys for Plaintiff*

## TABLE OF CONTENTS


**PAGE(S)**

INTRODUCTION ........ 8

SUMMARY OF FACTS COMMON TO ALL CLASS MEMBERS ........ 8

I. THE FACEBOOK TRACKING PIXEL ........ 8

II. DEFENDANT'S TRACKING OF VIDEO-VIEWING ACTIVITY ON ESPN+ USING THE FACEBOOK TRACKING PIXEL ........ 9

LEGAL STANDARD ........ 11

ARGUMENT ........ 12

II. THE CLASS IS ASCERTAINABLE ........ 12

III. PLAINTIFF'S CLAIMS ARE TYPICAL OF THE CLAIMS OF CLASS MEMBERS ........ 13

IV. COMMON QUESTIONS OF LAW OR FACT PREDOMINATE OVER INDIVIDUALIZED ISSUES ........ 15

A. CIPA § 631(a) ........ 15

B. CIPA § 632 ........ 17

C. Federal Wiretap Act, 18 U.S.C. § 2511 ........ 18

V. PLAINTIFF AND HIS COUNSEL WILL FAIRLY AND ADEQUATELY REPRESENT THE CLASS ........ 18

VI. A CLASS ACTION IS A SUPERIOR MEANS OF RESOLVING THIS LITIGATION ........ 19

VII. CLASS NOTICE SHOULD BE APPROVED ........ 21

CONCLUSION ........ 21

# TABLE OF AUTHORITIES

PAGE(S)

**CASES**

*Amgen Inc. v. CT Ret. Plans and Trust Funds*,
568 U.S. 455 (2013) ... 12

*Bally v. State Farm Life Ins. Co.*,
335 F.R.D. 288 (N.D. Cal. 2020) ... 13

*Bauman v. Chase Inv. Servs. Corp.*,
747 F.3d 1117 (9th Cir. 2014) ... 12

*Bee, Denning, Inc. v. Capital Alliance Grp.*,
(S.D. Cal. 2015) 310 F.R.D. 614 ... 20

*Briseno v. ConAgra Foods, Inc.*,
844 F.3d 1121 (9th Cir. 2017) ... 12, 13

*Chun-Hoon v. McKee Foods Corp.*,
2006 WL 3093764 (N.D. Cal. Oct. 31, 2006) ... 20

*Ellis v. Costco Wholesale Corp.*,
657 F.3d 970 (9th Cir. 2011) ... 14

*Famular v. Whirlpool Corp.*,
(S.D.N.Y. Mar. 19, 2019) 2019 WL 1254882 ... 19

*Frasco v. Flo Health, Inc.*,
349 F.R.D 557 (N.D. Cal. 2025) ... 15, 18

*Gen. Tel. Co. of the Nw v. EEOC*,
446 U.S. 318 (1980) ... 12

*Hanlon v. Chrysler Corp.*,
150 F.3d 1011 (9th Cir. 1998) ... 18, 19

*Hanon v. Dataproducts Corp.*,
976 F.2d 497 (9th Cir. 1992) ... 14

*Hawkins v. S2Verify*,
2016 WL 3999458 (N.D. Cal. July 26, 2016) ... 20

*Jones v. Shalala*,
64 F.3d 510 (9th Cir. 1995) ... 14

*Melgar v. Zicam, LLC*,
(E.D. Cal. Oct. 29, 2014) 2014 WL 5486676 ... 19

*Nguyen v. Stephens Inst.*,
2023 WL 11113887 (N.D. Cal. Oct. 30, 2023) .... 12

*Perez v. Rash Curtis & Assoc.*,
(N.D. Cal. Apr. 17, 2020) 2020 WL 1904533 .... 19

*Rannis v. Recchia*,
380 F. App'x 646 (9th Cir. 2010) .... 12

*Reyes v. San Diego County Bd. Of Supervisors*,
(1987) 196 Cal. App. 3d .... 20

*Sav-on Drug Stores, Inc. v. Superior Court*,
34 Cal. 4th 319, 334 (2004) .... 20

*True Health Chiropractic, Inc. v. McKesson Corp.*,
896 F.3d 923 (9th Cir. 2018) .... 13

*Tyson Foods, Inc. v. Bouaphakeo*,
577 U.S. 442 (2016) .... 15

*Walker v. Life Ins. Co. of the Sw.*,
953 F.3d 624 (9th Cir. 2020) .... 15

*Wal-Mart Stores, Inc. v. Dukes*,
564 U.S. 338 (2011) .... 15

*Wolin v. Jaguar Land Rover N. Am. LLC*,
617 F.3d 1168 (9th Cir. 2010) .... 19

*Zaklit v. Nationstar Morg., LLC*,
2017 WL 3174901 (C.D. Cal. July 24, 2017) .... 21

**STATUTES**

18 U.S.C. § 2511 .... 4, 18

18 U.S.C. § 2511(1)(a) .... 18

18 U.S.C. § 2511(1)(d) .... 1

18 U.S.C. § 2520 .... 20

18 U.S.C. § 2710 .... 9, 17

Cal. Civ. Code § 1799.3 .... 9, 17

Cal. Pen. Code § 632 .... 17

Cal. Penal Code § 637.2 .... 20

**RULES**

Fed. R. Civ. P. 23 ........ 11, 12, 13
Fed. R. Civ. P. 23(a) ........ 12
Fed. R. Civ. P. 23(a)(1) ........ 12
Fed. R. Civ. P. 23(a)(3) ........ 13
Fed. R. Civ. P. 23(a)(4) ........ 18
Fed. R. Civ. P. 23(b)(3) ........ 12, 15, 19
Fed. R. Civ. P. 23(b)(3)(D) ........ 13
Fed. R. Civ. P. 23(c)(2)(B) ........ 21

## INTRODUCTION

This case raises one central question: did Defendant Meta Platforms, Inc. ("Defendant" or "Meta") violate the California Invasion of Privacy Act and the Federal Wiretap Act when it surreptitiously tracked consumers' video-watching behavior on ESPN+ using its computer code called the Facebook Tracking Pixel? That question will be answered the same way for everyone in the Class and Subclass because Defendant used the same technology in the same way and with the same result for everyone. Defendant's own records can identify members of the Class and Subclass; ESPN+ subscribers' email addresses can be used to find those users' Event Data in the ads_pixel_traffic table stored in Defendant's Hive database. For these reasons, as detailed below, the Court should certify the proposed Class and Subclass, appoint Plaintiff as class representative and appoint his attorneys as class counsel.

## SUMMARY OF FACTS COMMON TO ALL CLASS MEMBERS

### I. THE FACEBOOK TRACKING PIXEL

The Facebook Tracking Pixel, also known as the Meta Pixel, is a "publicly available piece of code that third-party website developers can choose to install and use on their websites to measure actions taken on their own websites." Ex. 1 (Wooldridge Decl.) ¶ 3. "Specifically, when someone takes an action, a developer chooses to track on their website," like watching a video, "the Meta Pixel is triggered and sends Meta certain data, called an 'Event.'" *Id.* ¶ 4. "Meta attempts to match the Events it receives to Meta users" so that website developers can create "Custom Audiences" to target those users with advertisements. *Id.* Defendant accomplishes matching by collecting personally identifying information (such as name, email address and/or Facebook User IDs) ("PII") with Event Data through the use of cookies.

Defendant says that it does "not want or permit developers to transmit sensitive information" and purports to have "developed and implemented a filtering mechanism to screen out potentially sensitive data it detects." Ex. 1 (Wooldridge Decl.) ¶¶ 5, 8. Indeed, Defendant has publicly stated that it does not collect "sensitive" information. *See* Exs. 19-20 (Facebook Business Tools Terms) (website developers will not share data that they "know or reasonably should know … includes

health, financial or other categories of sensitive information (including any information defined as sensitive under applicable law"). But while Defendant has employed a filtering mechanism to screen out some types of sensitive data, it has not employed filtering of any kind for users' video-viewing information even though such information is sensitive under federal and California law. Ex. 2 (Defendant's Responses and Objections to Second Set of Requests for Production in *McDaniel v. Meta Platforms, Inc.*) at Response No. 27 ("Meta has at no time employed a filtering mechanism designed to screen out potential video viewing behavior."); 18 U.S.C. § 2710 (prohibiting disclosure of video-viewing information without proper consent); Cal. Civ. Code § 1799.3 (same).

## II. DEFENDANT'S TRACKING OF VIDEO-VIEWING ACTIVITY ON ESPN+ USING THE FACEBOOK TRACKING PIXEL

ESPN+ is a sports streaming service offering customers pre-recorded and live sports programming. The Facebook Tracking Pixel was active on ESPN+ since at least 2021. *See* Ex. 26 (ESPN+ related Event Data for Plaintiff). The Pixel sent various categories of data to Defendant from ESPN+, including, but not limited to, what videos users watched and when they watched them. Ex. 26 at Columns AN, BU, CB, CG, CV. Defendant received these data and matched them to its own users through the cookies and other information transmitted along with said data. Ex. 34 (Wooldridge PMK Dep.) at 134:2-136:4.

Plaintiff was an ESPN+ user during the relevant time period. Ex. 32 (Decl. of Oladeji Odumosu) ¶¶ 2, 8. Defendant's records of Event Data from ESPN+ demonstrate that it tracked Plaintiff's video-viewing activities on ESPN+ using the Facebook Tracking Pixel. *See* Ex. 26 (ESPN+ related Event Data for Plaintiff). Some of the data for a single Event from ESPN+ for Plaintiff is depicted below:

[redacted]

[redacted]

Ex. 26. By simply following the link in the first row of data, for example, Defendant can ascertain that [redacted]. [redacted]. Ex. 35 (Xia Decl.) ¶ 5. [redacted]. *Id.*

When Defendant received Event Data from ESPN+, [redacted]:

[redacted]

Ex. 34 (Wooldridge PMK Dep.) at 216:4-12.[1] In other words, [redacted]. *Id.* at 196:23-197:4 ("[redacted]").

Defendant has confirmed that it can [redacted]

[1] Objections are omitted from all deposition quotations throughout this memorandum.

[redacted]:

> [redacted]

> [redacted]

*Id.* at 221:11-18. From there, [redacted]:

> [redacted]

> [redacted]

> [redacted]

> [redacted]

> [redacted]

> [redacted]

> [redacted]

*Id.* at 216:13-217:10. Indeed, it was through this process that Defendant was able [redacted]. Ex. 26; Ex. 34 (Wooldridge PMK Dep.) at 199:15-200:18 ([redacted]); Ex. 35 (Xia Decl.) ¶¶ 3-5.

## LEGAL STANDARD

Federal Rule of Civil Procedure 23 governs class certification in federal court. A court may certify a class only if: (1) the class is so numerous that joinder of all members is impracticable; (2)

there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a); *Bauman v. Chase Inv. Servs. Corp.*, 747 F.3d 1117, 1121–22 (9th Cir. 2014). In addition, plaintiffs seeking certification under Rule 23(b)(3) must demonstrate that common questions of law or fact predominate over individual ones and that a class action is superior to other available methods of adjudication. Fed R. Civ. P. 23(b)(3).

The trial court ruling on a certification motion determines whether "the issues that may be jointly tried, when compared with those requiring separate adjudication, are so numerous or substantial that the maintenance of a class action would be advantageous to the judicial process and to the litigants." *Nguyen v. Stephens Inst.*, 2023 WL 11113887, at *3 (N.D. Cal. Oct. 30, 2023). The focus at class certification is on what type of questions, common or individual, are likely to arise most in the action, rather than on the merits of the case. *Amgen Inc. v. CT Ret. Plans and Trust Funds*, 568 U.S. 455, 459–60 (2013).

## ARGUMENT

### I. NUMEROSITY IS SATISFIED

Rule 23(a)(1) requires that the class be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). The numerosity analysis "requires examination of the specific facts of each case and imposes no absolute limitations," *Gen. Tel. Co. of the Nw v. EEOC*, 446 U.S. 318, 330 (1980), and is generally satisfied when a class includes at least 40 members. *Rannis v. Recchia*, 380 F. App'x 646, 651 (9th Cir. 2010). Here, given the ubiquitous nature of Defendant's business and ESPN+, it is clear that Defendant received event data from ESPN+ for well more than 40 Class and Subclass members. Numerosity is not in dispute.

### II. THE CLASS IS ASCERTAINABLE

The Ninth Circuit instructs that administrative feasibility is not a prerequisite to class certification, and that Rule 23's enumerated requirements are exhaustive. *Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121, 1124–28 (9th Cir. 2017). A class need only be defined by objective

criteria sufficient to identify members when that becomes necessary, including through self-identification or relevant records, and concerns about the burden or expense of doing so are addressed through Rule 23(b)(3)(D)'s manageability inquiry rather than as a threshold barrier to certification. *Id.* at 1127–28. The Ninth Circuit reaffirmed this rule, emphasizing that "there is no free-standing requirement above and beyond the requirements specifically articulated in Rule 23." *True Health Chiropractic, Inc. v. McKesson Corp.*, 896 F.3d 923, 929 (9th Cir. 2018).

Here, the class definition provides clear, bright-line criteria from which it can be determined whether any particular individual is a class member: namely, whether Defendant has Event Data for them showing video-viewing behavior and whether they used the same email address for their Facebook and ESPN+ accounts. These are objective criteria because Defendant either has Event Data showing video-viewing behavior for a particular person or it does not. *See, e.g.*, Ex. 26 (showing that Plaintiff watched the 2022 Men's Finals match at the Australian Open). Likewise, a consumer either has the same email address associated with their ESPN+ and Facebook accounts or they do not. *See, e.g.*, Exs. 28 and 30 (showing that Plaintiff used the same email address for both his ESPN+ and Facebook account). Plaintiff confirmed as much at his deposition, testifying that the email he used to subscribe to ESPN+ was "[t]he one associated with [his] Facebook." Ex. 36 (Odumosu Dep.) at 150:23-25. In addition, Defendant confirmed that it is [redacted]. Ex. 34 (Wooldridge PMK Dep. at 196:23-197:4, 216:4-217:10, 221:11-18); Ex. 35 (Xia Decl.) ¶¶ 3-5. The ascertainability requirement is therefore satisfied. *See Bally v. State Farm Life Ins. Co*., 335 F.R.D. 288, 300 (N.D. Cal. 2020) (membership in the class ascertained by reference to the defendant's records).

## III. PLAINTIFF'S CLAIMS ARE TYPICAL OF THE CLAIMS OF CLASS MEMBERS

To demonstrate typicality, Plaintiff must show that his claims are typical of those of the class. Fed. R. Civ. P. 23(a)(3). Typicality is satisfied where other members have the same or

similar injury, the action is based on the conduct not unique to the named plaintiff, and other class members have been injured by the same course of conduct. *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992). Importantly, typicality refers to the nature of the claim or defense of the class representative, not the specific facts from which it arose or the relief sought. *Jones v. Shalala*, 64 F.3d 510, 514 (9th Cir. 1995); *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 984 (9th Cir. 2011). A representative plaintiff's claim is therefore typical if it arises from the same event, practice, or course of conduct, giving rise to the claims of other class members and rests on the same legal theory.

Here, the claims of Plaintiff and all members of the Class and Subclass arise from exactly the same facts and the same theory: Defendant tracked their video-viewing behavior on ESPN+ using the Facebook Tracking Pixel. Plaintiff is a member of the Class and Subclass. He has the same email address associated with his ESPN+ subscription and Facebook account. Ex. 28 (Plaintiff Odumosu's Facebook Profile); Ex. 32 (Decl. of Oladeji Odumosu) ¶ 8. And Defendant received Event Data [redacted]. Ex. 26 ([redacted]). Plaintiff's deposition testimony corroborates these facts. He testified that he watched the "Nadal versus Medvedev" match in California in late January 2022—the same video-viewing activity reflected in Defendant's Event Data. Ex. 36 (Odumosu Dep.) at 137:2-3, 148:25-149:5. He further testified that he accessed ESPN+ on his "Mac and [W]indows" computers and that "the slight majority of [his] browser use has been Chrome," *id.* at 153:16-20, 154:18-21, consistent with the Event Data reflecting that the Pixel captured his activity through a desktop browser. And he confirmed that the email he used to subscribe to ESPN+ was "[t]he one associated with [his] Facebook." *Id.* at 150:23-25. Further, Plaintiff's interest in seeking relief is identical to the interests of the Class and Subclass. Thus, in asserting his own claims, Plaintiff will necessarily establish the elements of the very same claims of the individual member of the Class and Subclass.[2]

[2] Plaintiffs Starzinski, Medina, and McCoy are not seeking to represent the Class or Subclass. They were dismissed from this case on June 23, 2026. ECF No. 80.

## IV. COMMON QUESTIONS OF LAW OR FACT PREDOMINATE OVER INDIVIDUALIZED ISSUES

Rule 23(b)(3) requires that common questions of law or fact predominate over individual ones before a damages class may be certified. Fed. R. Civ. P. 23(b)(3). This requirement exists precisely because, unlike injunctive relief classes, individualized monetary claims require the court to ensure that common issues justify class treatment. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 362–63 (2011). That standard is met where "common questions present a significant aspect of the case and [whether] they can be resolved for all members of the class in a single adjudication; if so, there is clear justification for handling the dispute on a representative rather than on an individual basis." *Walker v. Life Ins. Co. of the Sw.*, 953 F.3d 624, 630 (9th Cir. 2020) (cleaned up); *cf. Frasco v. Flo Health, Inc.*, 349 F.R.D 557, 576 (N.D. Cal. 2025) ("the evidence of Flo's privacy disclosures is common to the class). The existence of some individualized issues does not defeat predominance; certification requires only that common issues predominate over individual ones. *See Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016).

Here, Plaintiff seeks certification of their causes of action under California Invasion of Privacy Act, Cal. Penal Code §§ 631-632, and the Federal Wiretap Act, 18 U.S.C. § 2511. As set forth below, "common questions present a significant aspect" of each cause of action.[3]

### A. CIPA § 631(a)

Defendant may be found liable under Cal. Penal Code § 631(a) if it used a "machine, instrument, or contrivance, or in any other manner" to:

> Willfully and without the consent of all parties to the communication, or in any unauthorized manner, reads or attempts to read or learn the contents or meaning of any message, report, or communication while the same is in transit or passing over any wire, line or cable or is being sent from or received at any place within this state.

Cal. Penal Code § 631(a). The elements of this claim are susceptible to classwide proof because they focus on Defendant's conduct common to the entire Class and Subclass. The testimony of Defendant's witnesses and the opinions of Plaintiff's expert witnesses furnish classwide evidence

[3] Plaintiff is not seeking to certify their two common law privacy claims.

that Defendant's Pixel and related software is "a machine, instrument, contrivance" or other "manner" of engaging in the conduct prescribed by § 631(a). *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 596 (9th Cir. 2020) (software plug-ins that tracked internet usage actionable under CIPA); *Brown v. Google*, 2021 WL 949372, at *16 (N.D. Cal. Mar. 12, 2021) (surreptitious collection of browsing data from Google Analytics and other applications covered by CIPA). Here, Defendant's Pixel either falls within the ambit of § 631(a), or it does not, but either way, the answer is the same for all Subclass members.

The question of whether Defendant acted "willfully" is likewise inherently subject to common proof. Defendant collected the video-watching data at issue in this case *en masse* and without any consideration for the individuals involved. Accordingly, it either collected that data willfully for all Class and Subclass members or for none. *See Romero v. Securus Techs., Inc.*, 331 F.R.D. 391, 411 (S.D. Cal. 2018) (rejecting argument that question of whether defendant intentionally violated CIPA would involve "individualized inquiries").

Likewise, the evidence in this case demonstrates that Defendant lacked consent in every instance to collect the video-viewing data of Class and Subclass members. To the contrary, Defendant made blanket public statements that it would *not* collect "sensitive data." *See* Exs. 19-20 (Facebook Business Tools Terms) (website developers will not share data that they "know or reasonably should know … includes health, financial or other categories of sensitive information (including any information defined as sensitive under applicable law"). But "sensitive data" necessarily includes data about video-watching behavior. 18 U.S.C. § 2710 (prohibiting disclosure of video-viewing information without proper consent); Cal. Civ. Code § 1799.3 (same); Transcript of Proceedings held on 08/14/2025 at 23-25, *Starzinski et al. v. Meta Platforms, Inc.*, No. 24-cv-04501-AMO, ECF No. 53 (N.D. Cal. August 16, 2025) (denying Defendant's motion to dismiss, characterizing ESPN's disclosure of personally identifiable information to Defendant as sensitive information, and rejecting Defendant's consent argument).[4]

[4] Courts have repeatedly held that general disclosures about collecting user data are insufficient to establish consent where there are separate public statements promising not to collect sensitive data. *See, e.g.*, *In re Meta Pixel Healthcare Litig.*, 2022 WL 17869218 at *9-10 and n.3 (N.D. Cal. Dec. 22, 2022) (rejecting argument that Facebook users consented to the disclosure of sensitive

Regardless of how the issue of consent is resolved on the merits, it will be resolved the same way for all members of the Class and Subclass because Defendant either sufficiently disclosed its wiretapping or it did not. Either way, that is a binary issue that can be resolved for the entire class in one stroke. *See*, *e.g.*, *True Health Chiropractic, Inc. v. McKesson Corp.*, 896 F.3d 923, 932 (9th Cir. 2018) ("Consent, or lack thereof, is ascertainable by simply examining the product registrations and the EULAs."); *Johansen v. One Planet Ops, Inc.*, 2018 WL 1558263, *5 (S.D. Ohio Mar. 5, 2018) (When a defendant claims to "obtain[] consent in a 'uniform manner' such as an online form, consent can be resolved on a classwide basis.") (internal quotation omitted). Even if there were individualized issues concerning consent, that would not be a basis to deny certification because the predominance standard does not require *every* aspect of a case to be susceptible to classwide proof. *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016); *Kelly v. City & Cnty. of San Francisco*, 2005 WL 3113065 (N.D. Cal. Nov. 21, 2005) ("Unique affirmative defenses that require some individualized inquiry do not present a per se bar to certification.").

**B. CIPA § 632**

The elements of the cause of action under CIPA § 632 are simple and subject to common proof. Namely, liability turns on evidence that Defendant "[1] intentionally and without the consent of all parties to a confidential communication, [2] use[d] an electronic amplifying or recording device [i.e., the Meta Pixel] to [3] eavesdrop upon or record the confidential communication [i.e., ESPN video viewing history]." Cal. Penal Code § 632. The first two elements may be proven with the same common evidence supporting the claim under § 631(a). The third element is established as a matter of law because, as noted above, video viewing history is deemed confidential under Federal and California law. 18 U.S.C. § 2710; Cal. Civ. Code § 1799.3.

---

information, because Meta expressly said it would not collect that information); *Doe v. Fullstory, Inc.*, 2014 WL 188101 at *3 (N.D. Cal. Jan. 17, 2024) (rejecting consent argument based on general disclosures about data collection because the defendants also "disclaim[ed] that third parties will have access to 'personal information' – the exact type of information [plaintiff] contends was intercepted by Meta and the other defendants."); *Brown v. Google LLC*, 2023 WL 5029899 at *9 (N.D. Cal. Aug. 7, 2023) (Google could not establish consent to its data collection practices based on a "general disclosure" that was inconsistent with Google's other statements about the privacy features of its Incognito mode).

**C. Federal Wiretap Act, 18 U.S.C. § 2511**

The elements of the Federal Wiretap Act are similar to those under CIPA § 631(a), inasmuch as they focus on whether Defendant either "[1] intentionally intercept[ed] [or] endeavor[ed] to intercept … any wire, oral, or electronic communication" or "[2] intentionally use[d], or endeavor[d] to use, the contents of any wire, oral, or electronic communication, knowing or having reason to know that the information was obtained through the interception of a wire, oral, or electronic communication in violation of this subsection." 18 U.S.C. § 2511(1)(a), (d). So, the same common evidence supporting the cause of action under § 631(a) will support the cause of action under the Federal Wiretap Act.

## V. PLAINTIFF AND HIS COUNSEL WILL FAIRLY AND ADEQUATELY REPRESENT THE CLASS

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). This inquiry has two components: whether the named plaintiffs have interests antagonistic of those of the class, and whether counsel is qualified to conduct litigation. *See Frasco v. Flo Health, Inc.*, 349 F.R.D 557, 574 (N.D. Cal. 2025). A representative is adequate where there is no evidence that they are situated so differently from the class that they may be subject to conflict. *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998). Counsel satisfies the adequacy requirement where their performance in the litigation demonstrates they are up to the task of representing the class. *Frasco*, 349 F.R.D. at 574.

Here, Plaintiff has dedicated substantial time to this action, including by reviewing the complaint, meeting with his attorneys, responding to written discovery requests (including the search for and production of responsive documents) and preparing for and sitting for a deposition. Ex. 32 (Odumosu Decl.) ¶ 5. His deposition testimony confirms his understanding of, and commitment to, that role: he testified that his duties as class representative are to "stand up for justice, not only for [him]self but for the larger group" and to "not sell out on the class," and that he would travel to San Francisco to participate in a trial because his "goal is justice." Ex. 36 (Odumosu Dep.) at 230:2-13. He frequently communicates with his attorneys, not only to discuss discovery or other issues requiring immediate attention, but also to keep abreast of the case

generally and significant events in the case. *Id.* He has a basic layperson understanding of the difference between an individual action and a class action. *Id.* ¶ 4. He expects to assist further in the case as needed, including testifying at trial. *Id.* ¶ 6. Plaintiff has no interest in this litigation that would conflict with class members, or any relationship with counsel that would cause them to put their economic interests above those of the class members they seek to represent. *Id.* ¶ 7.

In addition, Bursor & Fisher are adequate counsel. The attorneys at Bursor & Fisher have worked hard prosecuting this action and have a strong record of litigating class actions through jury trials and appeal. Since the firm's founding, they have won six of six class action trials. Ex. 33 (B&F Firm Resume). The attorneys at Bursor & Fisher also have substantial experience litigating cases involving privacy violations. In another privacy-related class action that went to trial, Judge Gonzalez-Rodgers of the Northern District of California noted the "quality" of Bursor & Fisher's work and found that its attorneys had achieved "extraordinary" results after a jury awarded $267,349,000 in favor of class members. *Perez v. Rash Curtis & Assoc.* (N.D. Cal. Apr. 17, 2020) 2020 WL 1904533 at *16, 21. Other courts have held that the attorneys at Bursor & Fisher are experienced and qualified, as Bursor & Fisher has been appointed class counsel in dozens of cases in both federal and state courts, and has won several multi-million dollar verdicts or recoveries." *Famular v. Whirlpool Corp.* (S.D.N.Y. Mar. 19, 2019) 2019 WL 1254882, at *4; *Melgar v. Zicam, LLC* (E.D. Cal. Oct. 29, 2014) 2014 WL 5486676, at *2 ("Bursor & Fisher is a well-established, reputable firm that is up to handling the challenges of this litigation and is capable of committing the requisite resources to doing so.").

## VI. A CLASS ACTION IS A SUPERIOR MEANS OF RESOLVING THIS LITIGATION

Rule 23(b)(3) requires that a class action be "superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). The superiority requirement exists to ensure that the class is "the most efficient and effective means of resolving the controversy." *Wolin v. Jaguar Land Rover N. Am. LLC*, 617 F.3d 1168, 1175 (9th Cir. 2010). Where individual recovery would be dwarfed by the cost of litigating on an individual basis, this factor weighs in favor of certification. *Id.* at 1175; *Hanlon*, 150 F.3d at 1023.

Here, the cost of litigating each class member's case individually against Defendant would heavily outweigh any individual recovery. Expert witness costs, filing fees, attorneys' fees, legal research, deposition and other litigation costs would quickly eclipse any recovery a class member could hope to obtain on his or her own. *Cf. Bee, Denning, Inc. v. Capital Alliance Grp.* (S.D. Cal. 2015) 310 F.R.D. 614, 629-630 (holding that the potential for individual recoveries as high as $1,500 for each violation did not incentivize individual actions over class actions or defeat superiority requirement for certification). Indeed, the costs of litigating this action are substantial. While that is par for the course in a complex class action, it would be impractical for any class member to invest that amount of money and time for an individual recovery, and it is unlikely any rational attorney would take on such risk and expense for a small individual recovery.

The superiority requirement also examines whether adjudicating the matter as a class action would be manageable. More specifically, this requires the Court to examine whether there has been a trial plan presented that would address potential difficulties managing the case as a class action. Here, Plaintiff's trial plan is filed concurrently with this memorandum, shows that the class trial will be both manageable and efficient because liability and remedy issues will be established almost entirely with a single expert witness as well as Defendant's own company data, documents, and witnesses. *See, e.g.*, *Chun-Hoon v. McKee Foods Corp.*, 2006 WL 3093764, at *4 (N.D. Cal. Oct. 31, 2006) (quoting *Sav-On*, 34 Cal. 4th at 334 ("Individual issues do not render class certification inappropriate so long as such issues may effectively be managed")); *cf. Reyes v. San Diego County Bd. Of Supervisors*, (1987) 196 Cal. App. 3d at 1279 (reversing trial court and certifying class action where plaintiffs could prove liability through common policies and practices and remedial issues could be effectively managed by the court). Counsel tentatively estimates that trial will take 5 days.

Another factor favoring superiority and manageability is that each of the causes of action to be certified involves statutory damages. *See* Cal. Penal Code § 637.2; 18 U.S.C. § 2520. So, calculating classwide damages here is a simple matter of multiplying the number of violations by the statutory damages available. *See Hawkins v. S2Verify*, 2016 WL 3999458 at *6 (N.D. Cal. July

26, 2016) ("[P]laintiff's counsel represented that both plaintiff and the class seek only statutory damages. Damages can therefore be proven through class-wide proof."); *Zaklit v. Nationstar Morg., LLC*, 2017 WL 3174901, at *9 (C.D. Cal. July 24, 2017) ("[c]ourts have been more willing to find predominance where, as here, the class seeks only statutory damages.") (internal quotation omitted).

## VII. CLASS NOTICE SHOULD BE APPROVED

The class notice will provide putative class members with information about the case, an opportunity to opt out and procedures for opting out, notice that class members may enter an appearance through counsel, and notice that class members who do not opt out will be bound by the judgment. *See generally* Fed. R. Civ. P. 23(c)(2)(B). Plaintiff proposes that class notice be distributed to Class members' email addresses registered with their Facebook accounts, supplemented with postcard notice if email notice reaches less than 70% of the Class, and that class notice also be posted to a publicly accessible website dedicated to this class action. Plaintiff will submit a proposed Class Notice and Notice Plan within fourteen days of an order granting class certification. Defendant should submit its response no later than seven days after Plaintiff's submission.

## CONCLUSION

For the reasons set forth above, this Court should certify the proposed Class, appoint Plaintiff Oladeji Odumosu as class representative, appoint Plaintiff Odumosu's counsel as class counsel, and approve dissemination of class notice.

Dated: June 25, 2026

**BURSOR & FISHER, P.A.**

By: *s/ Philip L. Fraietta*
Philip L. Fraietta

Philip L. Fraietta (State Bar No. 354768)
50 Main Street, Suite 475
White Plains, NY 10606
Telephone: (914) 874-0708
Facsimile: (914) 206-3656
Email: pfraietta@bursor.com

*Attorneys for Plaintiff*